IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **INNOVATIVE PET PRODUCTS PTY. LTD,** ) | |
| ) | |
| **Plaintiff,** ) | CIVIL ACTION |
| ) | |
| v. ) | No. 20-1120-KHV |
| ) | |
| **COSMIC PET, LLC f/k/a** ) | |
| **HYPER PET, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## Memorandum And Order

On May 6, 2020, Innovative Pet Products Pty. Ltd. sued Cosmic Pet, LLC f/k/a Hyper Pet, LLC, asking the Court to compel arbitration of certain disputes that arose out of a licensing agreement.  Complaint (Doc. #1).  On May 14, 2020, the Court noted that both parties apparently agree that the licensing agreement requires arbitration of the disputes, and therefore a case or controversy likely does not exist.  Order To Show Cause (Doc. #12).  Accordingly, the Court ordered plaintiff to show good cause in writing why the Court should not dismiss this action for lack of jurisdiction.  Id.  This matter is before the Court on plaintiff's Response To Order To Show Cause (Doc. #14) filed May 19, 2020.  For reasons stated below, the Court dismisses plaintiff's complaint.

## Procedural Background

On January 21, 2020, plaintiff demanded arbitration of various disputes which arose out of the licensing agreement.  Preheim Letter (Doc. #1-2).  On February 12, 2020, plaintiff's counsel suggested a particular arbitrator.  Malone Email (Doc. #3-3) at 15.  On March 15, 2020, plaintiff's counsel emailed defense counsel to follow up on their discussion from "last Friday," in which they

had apparently conferred about a proposed arbitrator.[1]  Malone Email (Doc. #3-3) at 26.  Defense counsel rejected the arbitrator, so plaintiff's counsel suggested that defendant provide a list of three arbitrators, from which they would choose one.  Id.  Plaintiff's counsel warned that "if we cannot come to an agreement quickly," they would file a demand with the American Arbitration Association ("AAA").  Id.

The next day, on March 16, 2020, defense counsel responded, commenting on their "productive and positive" call.  Jones Email (Doc. #3-3) at 25.  Defense counsel stated that even though he believed that they could settle the disputes without arbitration, he had vetted the proposed arbitrator and concluded that he was unacceptable.  Id.  Defense counsel asserted, however, that "[i]f necessary, we can vet other options."  Id.  He explained that due to other time commitments, he could not make suggestions that day, but that if settlement negotiations fell through, he was "certainly open to vetting more candidates."  Id.  Later that day, plaintiff responded, agreeing that the call was "positive and productive."  Malone Email (Doc. #3-3) at 24.  He stated, however, that the "main concern is timing," as his client "has expressed some frustration that [defendant] does not appear to have a sense of urgency about moving this along."  Id.  According to plaintiff's counsel, "[d]ragging this out without resolution could damage our client's business prospects in the U.S."  Id.

On March 20 and 23, 2020, plaintiff's counsel followed up with defense counsel about selecting an arbitrator.  Malone Emails (Doc. #3-3) at 23.  On March 24, 2020, defense counsel stated that even though their "time and efforts would be better served working towards a settlement agreement," he was working with co-counsel to put together a list of three arbitrators, which he would send "in the next couple days."  Wiggins Email (Doc. #3-3) at 22.  Over the next several

---

[1]     Presumably, this conversation occurred on March 6 or 13, 2020.

weeks, the parties continued settlement negotiations, during which defendant did not provide the list of arbitrators.  See Wiggins Email (Doc. #3-3) at 21–22; Malone Email (Doc. #3-3) at 20.

On May 6, 2020, plaintiff sued defendant, asking the Court to compel arbitration and issue an injunction which prohibits defendant from marketing or selling products that are similar to those in the licensing agreement and orders defendant to restore plaintiff's trademark to online product descriptions.  Complaint (Doc. #1).  Plaintiff asserts that these measures are necessary to maintain the status quo prior to arbitration.  On May 6, plaintiff also filed a separate motion which requests the same injunctive relief.  Motion For Preliminary Injunction And Memorandum In Support (Doc. #3).  Two days later, on May 8, 2020, plaintiff filed another motion seeking an expedited hearing on the motion for preliminary injunction or, in the alternative, immediate entry of a temporary restraining order.  Motion For Expedited Hearing Or Temporary Restraining Order And Memorandum In Support (Doc. #9).

On May 14, 2020, the Court ordered plaintiff to show good cause why the Court should not dismiss this action for lack of jurisdiction.  Order To Show Cause (Doc. #12).  Specifically, the Court noted that both parties apparently agree that pursuant to their licensing agreement, they must arbitrate the disputes at issue, and plaintiff's allegations did not show that defendant had refused to do so.[2]  On May 19, 2020, plaintiff filed its response, which noted that four days earlier,

---

[2]   The Court also noted that (1) any dispute over arbitration that may have existed was likely moot because defendant asserted that it would arbitrate and (2) plaintiff had not initiated arbitration with the AAA.

As to the first point, plaintiff argues that its claims are not moot because defendant's delay tactics are "capable of repetition, yet evading review."  Response To Order To Show Cause (Doc. #14) (citations omitted).  As to the second point, plaintiff asserts that pursuant to the licensing agreement, it agreed to arbitrate pursuant to AAA rules, but it did not agree to AAA arbitration itself.  Accordingly, plaintiff argues, it had no obligation to file an arbitration demand with the AAA.  See Jose Evenor Taboada A. v. AmFirst Ins. Co., No. 18-883-TSL-RHW, 2019

(continued…)

defendant had sent a list of four arbitrators, and that plaintiff was "actively engaging in reviewing that list and moving toward an agreeable arbitrator."  Response To Order To Show Cause (Doc. #14) at 1–2.

## Analysis

As the Court noted in its show cause order, Article III of the United States Constitution limits the Court's jurisdiction to cases and controversies, which the Court must ensure *sua sponte*. Bank Of Nova Scotia v. Suitt Const. Co., 209 F. App'x 860, 861 (10th Cir. 2006) (at every stage of litigation, Court has independent obligation to ensure existence of case or controversy); Yeager v. Nat'l Pub. Radio, No. 18-4019-SAC, 2019 WL 8272463, at *1 (D. Kan. Feb. 15, 2019). Moreover, under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, the Court may only compel arbitration where plaintiff is aggrieved by defendant's "failure, neglect, or refusal" to arbitrate. See Phoenix Aktiengesellschaft v. Ecoplas, Inc., 391 F.3d 433, 437 (2d Cir. 2004) (doubtful that petition to compel filed before adverse party has refused arbitration would present Article III court with justiciable case or controversy) (quoting Hartford Acc. & Indem. Co. v. Equitas Reinsurance

---

[2](…continued)
WL 3604613, at *5 (S.D. Miss. Aug. 6, 2019) (majority of courts "recognize a distinction between agreements requiring a proceeding 'administered by' a particular arbitral forum and those providing for a proceeding conducted 'in accordance with' the named forum's rules").

Because plaintiff's allegations do not show a case or controversy, the Court need not address these issues.  The Court notes, however, that on at least three occasions, plaintiff's counsel has threatened to initiate arbitration with the AAA.  See Malone Email (Doc. #3-3) at 26; Malone Email (Doc. #3-3) at 24–25; Malone Emails (Doc. #3-3) at 23 ("Our client is willing to file with the AAA if necessary, but we'd prefer to work with you to find an arbitrator").  Yet, despite asserting the *extreme* urgency of arbitration, it has declined to do so.  As the Court noted in its show cause order, nothing is stopping plaintiff from filing a demand with the AAA.  Plaintiff's strategy here reeks of gamesmanship: making empty threats of AAA arbitration to extort defendant's agreement to expedite arbitration in other fora, and—failing that—seeking to enlist the coercive power of the Court to compel arbitration *outside* the AAA.  The parties apparently did not agree to a specific forum for arbitration, or a process for selecting one.  Defendant's failure to promptly fall in line with plaintiff's process and timetable does not, in and of itself, constitute a case or controversy under these circumstances.

Ltd., 200 F. Supp. 2d 102, 108 (D. Conn. 2002)); Bacon v. Avis Budget Grp., Inc., No. 18-3780, 2020 WL 2517969, at *3 n.2 (3d Cir. May 18, 2020) (defendant must "unequivocally" refuse to arbitrate); Joia v. Jozon Enterprises, Inc., No. 18-365-WES, 2019 WL 1226986, at *8 (D.R.I. Mar. 13, 2019) (no case or controversy where party does not refuse to arbitrate); Marzano v. Proficio Mortg. Ventures, LLC, 942 F. Supp. 2d 781, 799 (N.D. Ill. 2013) (cannot order arbitration where not clear that plaintiffs had refused to arbitrate); AES Gener, S.A. v. Compania Carbones del Cesar S.A., No. 08-10407(WHP), 2009 WL 2474192, at *2 (S.D.N.Y. Aug. 12, 2009) (plaintiff can compel arbitration only when defendant "unequivocally" refuses to arbitrate, either by failing to comply with arbitration demand or unambiguously manifesting intention not to arbitrate); Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co., 628 F. Supp. 2d 674, 680 (E.D. Va. 2009) (no dispute unless defendant refuses to arbitrate).

Here, plaintiff's complaint does not present a case or controversy. Both parties agree that pursuant to their licensing agreement, they must arbitrate the disputes at issue. See Plaintiff's Reply In Support [Of] Its Motion For Expedited Hearing Or Temporary Restraining Order (Doc. #11) filed May 13, 2020 at 2 (parties agree that their disputes are subject to arbitration); see also Response to plaintiff's motion for expedited hearing for temporary restraining order (Doc. #10) filed May 11, 2020 at 1 (same).

Moreover, plaintiff's allegations do not show that defendant has refused to arbitrate. They instead show that the parties have agreed that their disputes are subject to arbitration, and they are currently in the process of selecting an acceptable arbitrator. On February 12, 2020, plaintiff's counsel suggested a specific arbitrator. On March 6 or 13, 2020, the parties apparently conferred about the proposed arbitrator, and when defense counsel rejected him, plaintiff's counsel suggested that defendant provide a list of three alternatives, and plaintiff's counsel would select an arbitrator

from that list. On March 16, counsel for both parties exchanged emails in which they each commented on their "productive and positive" call. Malone Email (Doc. #3-3) at 24; Jones Email (Doc. #3-3) at 25. Defense counsel reiterated that if they were unable to settle the dispute, he would vet other arbitrators. On March 24, 2020, defense counsel stated that he was working with co-counsel to put together a list of three arbitrators, which he would send "in the next couple days." Wiggins Email (Doc. #3-3) at 22. Defense counsel did not send the list during that time frame, but over the course of the next several weeks, the parties continued to negotiate regarding settlement until May 6, 2020, when plaintiff sued defendant to compel arbitration. On May 15, 2020, defendant provided plaintiff a list of four arbitrators. In other words, the parties were in the process of selecting an arbitrator when, less than two and a half months into the process, plaintiff abruptly sued to compel arbitration—despite both parties actually agreeing on the issue. Plaintiff's allegations do not show that defendant has refused to arbitrate and, in fact, they show the opposite.

Plaintiff argues that defendant's delays in suggesting arbitrators are tantamount to a refusal. According to plaintiff, defendant's "piecemeal delays of a few days or a few weeks at a time have added up to months of lost time," a sentiment which is consistent with plaintiff's expressions of urgency in discussions with defendant. Response To Order To Show Cause (Doc. #14) at 3; see Malone Email (Doc. #3-3) at 26 (plaintiff will file AAA demand "if we cannot come to an agreement quickly"); Malone Email (Doc. #3-3) at 24 (plaintiff's "main concern is timing," and it is frustrated that defendant "does not appear to have a sense of urgency about moving this along"). Plaintiff offers no authority for the proposition that defendant has effectively refused to arbitrate merely because the parties were unable to agree on an arbitrator within plaintiff's expediated

timetable.[3]  Indeed, under the standard that plaintiff proposes, when parties cannot agree on an arbitrator within a short period of time—plaintiff suggests that less than three months is enough—the Court can intervene to compel arbitration, even though everyone involved agrees that arbitration is required and the parties have no contractual obligation to act on a certain schedule.[4]

To compound this problem, because defendant has offered four arbitrators, plaintiff only needs to select one and get on with the process of arbitration.  See Malone Email (Doc. #3-3) at 23 (if defendant provides three names, "we would likely be able to agree on one of them"); Malone Email (Doc. #3-3) at 26 (if defendant provides three names, "we believe we will be able to agree to one of those three").  Indeed, the record shows that plaintiff has actually agreed to an arbitrator, and the parties are in active discussions with him.  Malone Email (Doc. #15-1) filed May 21, 2020 at 4.  Accordingly, a Court order which tells the parties to arbitrate would effectively accomplish nothing.  Such a standard runs contrary to the jurisdictional restrictions under Article III and the FAA.  See Phoenix Aktiengesellschaft, 391 F.3d at 437; Bacon, 2020 WL 2517969, at *3 n.2; Marzano, 942 F. Supp. 2d at 799; AES Gener, S.A., 2009 WL 2474192, at *2; Am. Int'l Specialty Lines Ins., 628 F. Supp. 2d at 680.  Because plaintiff's complaint does not present a case or controversy, the Court lacks jurisdiction.

---

[3]  Again, if plaintiff believes that defendant is not acting swiftly enough to satisfy its urgent timeframe, nothing is stopping it from filing a demand with the AAA, which it has threatened at least three times.

[4]  Plaintiff cites cases in which parties waived arbitration rights by refusing to arbitrate.  See Schreiber v. Friedman, No. 15-6861CBAJO, 2017 WL 5564114, at *11 (E.D.N.Y. Mar. 31, 2017) (party's conduct demonstrated "intentional pattern of gamesmanship and delay" which constituted waiver of right to arbitrate).  Even assuming *arguendo* that the same "refusal" standard applies in this context, defendant's alleged conduct does not come close to that level.  See id. (after receiving summons from arbitrator, party refused to submit to arbitration for six months).

**IT IS THEREFORE ORDERED** that plaintiff's Complaint (Doc. #1) filed May 6, 2020 is **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiff's Motion For Preliminary Injunction And Memorandum In Support (Doc. #3) filed May 6, 2020 is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that plaintiff's Motion To File Under Seal (Doc. #4) filed May 6, 2020 is **OVERRULED as moot.**

**IT IS FURTHER ORDERED** that plaintiff's Motion For Expedited Hearing Or Temporary Restraining Order And Memorandum In Support (Doc. #9) filed May 8, 2020 is **OVERRULED as moot.**

Dated this 22nd day of May, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge